MOORE, Executor, v. GORDON, Executor.*

1. **Executor: DISTRIBUTION.** The right to a distributive share vests in the person entitled, whether widow or next of kin, *instanter* upon the death of the intestate, and not from the time of distribution actually made ; and distribution gives to the distributee no new title, but only ascertains the property to which the title attaches. If the death of the distributee takes place upon distribution actually made, his share goes to his legal representative or legatee ; and the right of the widow to her distributive share is held by a title as high as that of the heir or next of kin, and like his is not personal, but transmissable.

*Appeal from Des Moines District Court.*

FRIDAY, DECEMBER 28.

STATUTE OF DISTRIBUTION : RIGHT OF WIDOW : WHEN IT VESTS.—The facts upon which the legal questions in the present case arise, as well as the questions to be decided, are expressed in the following agreement of the parties, viz. :

"In the month of January, 1860, John Pierson, Sr., died testate (so far as the same comes of making a will which did not dispose of more than about one-third [⅓] of his estate), leaving an estate composed of *personal property* only ; variously estimated or valued at $50,000. His will by copy is attached as an exhibit hereto.

"After paying all the legatees and fully executing the will, there remained in the hands of the executors, John Pierson, Jr., and Johnson Pierson, a large residue of the estate, to be disposed of according to law.

---

* The opinions in this and the six cases following were filed at the December Term, 1866, and were, by my predecessor, Mr. Withrow, intended to be included in his last volume — the 21st of Iowa Reports. They were, by him, accordingly placed with the rest of the manuscript for that volume in the hands of the printer ; but, not having been included therein, they were recently, for the first time, brought to my attention, and forwarded to me by the printer. Believing the interests of the profession would not permit of their entire omission, I here insert them.

"In the month of February, 1861, John Pierson, Sr.'s, widow, Mrs. Sarah J. Pierson, also died testate; she left no estate however, unless she was entitled to recover one-third of the residuum of her husband's estate. Under the belief that she had such an interest, she executed her will disposing of the same. A correct copy of her will is hereto attached. The present defendant, Alexander Gordon, is her executor, and he now seeks to recover one-third of the residue of John Pierson, Sr.'s, personal estate, to be distributed to the legatees of her will.

"There was never any distribution of assets, nor was there any order or action, either of the County Court or of the parties themselves, that would aid the interest in vesting. The widow never came into possession or received her one-third in hand. The only question is whether Mrs. Pierson's will has conferred upon her executor the right to demand and take from the executors of John Pierson, Sr., one-third of the residuum of his personal estate, as her distributive, or dower share. If Mrs. Pierson, living, did not have a vested interest in the residuum, or if the interest was not capable of being transmitted by will, then the cause will be reversed. If she had such an interest and it could be transmitted by her will then the cause will be affirmed."

The District Court decided in favor of the executor of Mrs. Pierson, and the plaintiffs appeal.

*J. C. & B. J. Hall* and *J. Tracy* for the plaintiff.

*C. Ben. Darwin* for the executor of Sarah J. Pierson.

DILLON, J. — The will of John Pierson, referred to in the agreed statement, was executed May 12, 1859, and EXECUTOR: distribution. opens with the recital, that, "having heretofore transferred my land to my boys, I now

will and bequeath to Philip Leebrick and Sarah Leebrick, my grandchildren, one thousand dollars," etc. The will also contains similar bequests to other grandchildren, and one in favor of the M. E. Church, to be used in building an institution of learning in the city of Burlington.

It contains no bequest or provision for his wife.

Mrs. Pierson's will was executed March 3, 1860, and contains bequests in favor of her grandchildren, etc.

In relation to " the distribution of personal property the statute provides as follows:

" Section 2422 (1390). The personal property of the deceased not neces sary for the payment of debts, nor otherwise disposed of as herein before provided, shall be distributed to the same persons, and in the same pro-portion as though it were real estate.

" Section 2423 (1391). The distributive shares shall be paid over as fast as the executor can properly do so.

" Section 2424 (1392). The property itself shall be distributed in kind whenever that can be done satisfactorily and equitably. In other cases the court may direct the property to be sold, and the proceeds to be distributed.

" Section 2480 (4). *Be it further enacted,* That said widow is entitled to receive the same amount of personal property, that she is entitled to receive by virtue of section thirteen hundred and ninety, and that her title thereto shall remain absolute."

Under section 2422, quoted above, personal property is to be " distributed to the *same persons* and in the *same proportions* as though it were real estate."

By the law in force when section 2422 was passed, the widow was entitled to one-third in fee of the real estate of the husband (Code 1851, § 1394), and the heirs at law to the balance.

In 1853, the legislature restored dower as at common law. (Rev. 2477-80.) But lest this change should, under section 1390 of the Code (being section 2422 of the Revision), have the effect to give the widow a life estate or interest only in her distributive share of personal prop-

erty, section 2480 was enacted, giving her the same amount of personal property, that she was entitled to receive by virtue of section 1390 (viz., one-third), and declaring, that her title thereto should *remain absolute*.

Taking these sections together, it is beyond controversy plain, that, if Mrs. Pierson had lived until distribution had been made, she would have been entitled to receive of the *residuum* of her husband's personal estate, the one-third part and her title thereto would be *absolute*.

Is this right vested and perfect only when distribution is actually made, or is it vested and perfect at, and from the time of, the death of the intestate? That the right is not contingent upon actual distribution to the widow, seems to be left in no doubt whatever by the statute. It would not be claimed that the right of one of the heirs would be defeated if he should die before distribution, or an order for distribution. And, under the statute provisions above referred to, we see no more reason for holding that the widow's distributive share will lapse (so to speak), if she dies before distribution, than for holding that the right of a child, or any of the next of kin, would be defeated by the same circumstance.

The widow's right is conferred by the same section which confers the right upon the child or heir. Her *title* equally with that of the child or next of kin is *absolute*.

Why should death before distribution defeat the right or the vesting of the share in the one case and not in the other?

We think the true view is, not to regard Mr. Pierson as having died either testate or intestate, but to regard him as having died testate as to all property disposed of, and intestate as to all property not disposed of by his will. See on this point *Nickerson* v. *Bowley* (8 Metc. 429).

The above result, to which we have been conducted by an examination of the statute, coincides with the view

taken in England and in different States in this country, of statutes of distribution not dissimilar to ours.

Respecting these statutes, the cases and authorities below cited justify us in laying down these general principles, viz.: That the right to a distributive share vests in the person entitled, whether widow or next of kin, *instanter* upon the death of the intestate, and not from time of distribution actually made; that distribution gives to the distributee no new title, but only ascertains the property to which the title attaches; that, if the death of the distributee takes place before distribution actually made, his share goes to his legal representatives or legatee, and that the right of the widow to her distributive share is held by a title as high as that of the heir or next of kin, and, like his, is not personal, but transmissible. *Davers* v. *Dewes*, 3 P. Wms. 40, note; Reeve, 57, 71; Bac. Abr. tit. "Exr. & Admr." 1; 2 Eq. Cas. Ab. 444; *Hayward* v. *Hayward*, 20 Pick. 517; followed and approved in *Kingsbury* v. *Scovill*, 26 Conn. 349; *Foster* v. *Fifield*, 20 Pick. 67; followed and approved in *Mills* v. *Marshall*, 8 Ind. 54; *Adams* v. *Adams*, 10 Metc. 170; *Thompson* v. *Thomas*, 30 Miss. (1 George) 152; *Nickerson* v. *Bowley*, 8 Metc. 424.

Accordingly " it is," says SHAW, Ch. J., " a well established rule of law, that the right to a distributive share of personal estate, under the statute of distributions, is a vested interest, vesting in point of right, at the time of the decease of the intestate, although the persons to take, the amount to be received, must be ascertained and determined by a decree of the probate court; which, from various causes affecting the settlement of the estate, may not be made till long afterward. It seems to follow that Mrs. Rider's right (to a distributive share), like all other vested rights to personal property, went to her personal representatives." *Nickerson* v. *Bowley, supra.*

We are of opinion, therefore, that Mrs. Pierson's will confers upon her executor the right to demand and take from the executors of her husband the one-third of the residue of his personal estate, as her distributive share.

Affirmed.