IN RE ESTATE OF JOHN CLARK WEAVER, Deceased, v. STATE OF IOWA, Appellant.

**Collateral Inheritance Statute:** CONSTRUCTION: *Personal property in another state:* Code, section 1467, declares that property, and any interest therein within the jurisdiction of the state passing to collateral heirs, shall be subject to a tax of five per centum, of its value, which shall be a lien on the estate until paid. *Held,* 1 that where a resident of Iowa died possessed of cattle in an adjoining state, which passed under his will to collatteral heirs, such cattle or the proceeds arising from a sale thereof, in such state, were not liable to the tax, since the situs of the property and not the testator's domicile determined the liability of the property thereto.

SAME: The fact that the cattle were sold by the executor, and the proceeds brought into Iowa for distribution, did not render such 2 proceeds liable to the tax, since the title to the property vested in the devisees under the will in the state where it was located at the time of testator's death.

*Appeal from Lee District Court.*—HON. HENRY BANK, Judge.

WEDNESDAY, JANUARY 24, 1900.

APPLICATION by George E. Rix, administrator of the above-entitled estate, for an order directing him as to his duty in regard to paying an inheritance tax upon certain personal property belonging to the estate. From an order holding that the administrator was not required to pay the tax the state appeals.—*Affirmed.*

*Milton Remley,* Attorney General, for the State.

*A. Hollingsworth* for respondent.

DEEMER, J.—John Clark Weaver, a resident of Lee county, Iowa, died, leaving an estate in said county valued at something like twenty thousand dollars, exclusive of a herd of cattle, consisting of four hundred and twenty-eight head, that were then upon a farm, belonging to his brother, in the state of Missouri. A considerable portion of his estate passed· to his collateral heirs, and the question for determination is whether the property, or rather the proceeds thereof, is subject to the inheritance tax. Some time after Weaver's death the cattle were sold in the state of Missouri, and the proceeds were turned over to the administrator in this state. The attorney general contends that the property was subject to the tax, because it was constructively in the possession of the deceased in this state at the time of his death, or, if this be not true, that the proceeds from the sale of the cattle after they had been turned over to the administrator became subject to the tax; while the administrator contends that the situs of the property at the time of the death of Weaver was in the state of Missouri, and that, as the right to tax is referable to the death of the owner, no tax can lawfully be assessed against it, or against the proceeds thereof which afterwards came into the hands of the administrator. These contentions are to be settled by reference to section 1467 of the Code, the material parts of which are as follows: "All property within the jurisdiction of this state and any interest therein, whether belonging to the inhabitants of this state or not and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state * * *. other than to or for the use of the father, or mother," etc., "shall be subject to a tax of five per centum of its value * * * for the use of the state. * * * The tax aforesaid shall be and remain a lien on such estate from the death of such decedent until paid." It will be seen from this that it is property within the jurisdiction of this state, whether tangible or intangible,

that is subject to the tax. That the legislature has power to impose a tax on residents upon the personal property owned by them, no matter where the same is situated, is conceded. Indeed, the authorities so hold without any apparent conflict. See Cooley Taxation, 55-57, and 1 Hare Constitutional Law, 318, and cases cited. But the question is, did the legislature of this state make tangible property situated in another jurisdiction subject to the tax? While it is a general rule that personal property follows the domicile of the owner, yet it is not true that, for the purpose of taxation, tangible property may not have a situs other than that of the domicile of the owner. The cattle belonging to the deceased were not within the jurisdiction of this state, unless it be constructively. The courts make a distinction between tangible property, such as horses and cattle, and intangible property, such as debts and choses in action. Judge Story, in his Conflict of Laws, says: "A nation within whose territory any personal property is actually situated has an entire dominion over it while therein in joint sovereignty, and jurisdiction as it has over immovable property situated there." *In Re McGhee's Estate,* 105 Iowa, 9, we said that the situs of personal property, rather than the domicile of the owner, fixed the jurisdiction of the court for the purpose of enforcing the inheritance tax. See, also, *Orcutt's Appeal,* 97 Pa. St. 179; *People v. Commissioners of Taxes,* 23 N. Y. 224; *In re Lines' Estate,* 155 Pa. Sup. 378 (26 Atl. Rep. 728); *In re Small's Estate,* 151 Pa. Sup. 1 (25 Atl. Rep. 23; Rorher Interpretation Statutory Law, p. 205; *Com. v. Smith,* 5 Pa. St. 142; *Alvany v. Powell,* 55 N. C. 51. In most, if not all, the cases cited by the attorney general, the statute under consideration expressly imposed a tax on personal property, no matter where situated. See chapter 713 of the Acts of New York state for the year 1887, and chapter 399 of the Acts of the same state for the year 1892, and also the Acts of the year 1826 of the state of Pennsylvania as amended by the Laws

of the years 1850 and 1887.  *In re Short's Estate,* 16 Pa.
St. 63, and *State v. Dalrymple,* 70 Md. 594 (17 Atl. Rep.
82, 3 L. R. A. 372), clearly illustrate this point.  ·But it
is said that when the property was sold, and the proceeds
were brought within the jurisdiction of this state, they
became subject to the tax; and in support of this contention
it is argued that the tax is upon the right of succession, and
not on the property, and that, before the devisees may take,
they must pay the tax.  Whether or not the tax is a suc-
·cession tax, properly so called, or a tax upon property, we
need not decide, for it is agreed between the parties that
the property passed by will to certain persons, naming them,
and not by descent or inheritance.  The cattle were not
.sold until about four months after the death of the testator,
and the proceeeds were not brought within the state until
the spring of the year 1898.  The act which we have quoted
says in express terms that the tax shall be and remain a lien
·upon the estate from the death of the testator until paid,
·clearly indicating that the situs of the property at the time
of the testator's death is controlling.  Aside from this, how-
ever, if the property passed by will, as agreed, it became
the property of the devisees immediately upon the death
of the testator, and a subsequent conversion into money, and
a transfer to the state, would not render the proceeds sub-
ject to the tax.  It may be, if the property passed by descent,
a different rule would apply, but that question need not be
decided.  As said in *Drayton's Appeal,* 61 Pa. St. 172: "To
·determine the nature of the thing descending or devised,
and thus ascertain whether it was within the rule thus estab-
lished, we must consider what it was at the time of its
passing from the person who died seised or possessed thereof;
that is, in the case either of descent or devise at the time
·of his death."  The death of the testator seems to fix the
time when the property became subject to the tax, if it
ever does.  *In re Williamson's Estate,* 153 Pa. St.  (26
.Atl. Rep. 246); *In re Handley's Estate,* 181 Pa. St. 339;

*Mellons's Appeal,* 114 Pa. Sup. 339 (37 Atl. Rep. 587. Even where personalty passes by descent, we have held that title vests in the heir immediately upon the death of the intestate. *Moore v. Gordon,* 24 Iowa, 158. It is said in that case, quoting·the language of Chief Justice Shaw: "The right to a distributive share of personal estate under the statute of distribution is a vested interest resting upon it of right at the time of the decease of the intestate,. although the persons to take and the amount to be received must be ascertained and determined by a decree of the probate court." It is clear that the tax did not attach to the cattle while in the state of Missouri at the time of the death of the testator, nor will the mere act of the executor in converting the property into money and bringing it within the jurisdiction of this state, render it liable to the tax. If the statute said that all property passing to collateral heirs should·be taxed, there would be more.ground for adopting the attorney general's theory. But it says all property within the jurisdiction of this state passing to such heirs shall be subject to the tax. When this property passed to the collateral heirs, it was clearly not subject to the tax, and it seems to us that no subsequent act of the executor can make it liable. If the property had been distributed in the state of Missouri,—as under the will it might have been,—there would be no doubt that it would not have been subject to the tax imposed by our law. Surely, the bringing of the proceeds into this state for the purpose of distribution will not make it subject to the tax. See *Drayton's Appeal,* supra; *In re Handley's Estate,* 181 Pa. St. 339 (37 Atl. Rep. 588; *Com. v. Gordon,* 114 Pa. St. 82 (7 Atl. 229). The controlling thought in the case is that the property passing by will was never in this state, and was not subject to the tax at the time of the testator's death. When the proceeds were brought to this state, they belonged to the devisees, and no act of the executor could make them subject to the tax. We are of opinion that the

proceeds of the cattle are not subject to the tax, and the order and judgment of the district court is AFFIRMED.

GRANGER, C. J., not sitting.