IN RE ESTATE OF ELIZABETH C. HALE.

HENRY O. HALE, Applicant, Appellant, v. O. M. THATCHER, Executor, Appellee; STATE TAX COMMISSION, Intervener.

No. 45529.

MARCH 18, 1942.

C. A. Smedal and Mitchell & Loth, for appellant.

Dwight G. Rider, D. M. Kelleher, and Maurice J. Breen, for appellee O. M. Thatcher.

John E. Mulroney, Assistant Attorney General, for appellee State Tax Commission.

SAGER, J.—The issue presented is simple, though the arguments have gone into fields into which we find it unnecessary to follow. Appellee was appointed executor of the estate of Elizabeth C. Hale and performed the usual duties incident to the position of executor. The will under which he acted had been duly probated, and a contest filed against it later failed. We are advised in argument that a motion for a new trial has since been sustained. Appellee seems to argue that this will case may come up to this court on appeal sometime but what bearing that can have here is not clear.

In the course of administration all debts, claims, and legacies were paid and most of the personal estate turned over to appellant. The United States Government and the State of Iowa, acting through their proper officers, made claim for inheritance and estate taxes. These have been paid. At the time the final report was ready to be made, or had already been prepared, it occurred to appellee (prompted, he says, by some agents of the federal internal revenue office) that appellant had or may have appropriated not only a large number of bonds which had been the property of Elizabeth in her lifetime but also bonds which she purchased with the income from those she already owned. Executor brought two suits, one to recover the bonds owned by Elizabeth in her lifetime and the other, in equity, for an accounting of bonds purchased by her from income. We have purposely avoided stating the exact amounts involved, but they are so large as to prompt this statement in appellee's argument:

"It is true, of course, that Thatcher had in mind in bringing these suits that his commission as executor would be increased. As an experienced businessman and a former bank officer he knew this and he obviously is human enough to want

to make as large a commission as he could, legitimately, and again it might be said this was sort of an ulterior purpose.''

■ Appellee, when asked why he would not take security tendered by appellant to protect him against any possible contingent liability on any tax which might be thereafter demanded, expressed the view that he had made an agreement once with appellant (with reference to his executor's fee) and appellant had not lived up to it. Pressed on cross-examination, appellee admitted that one of his motives for starting these suits was to have the money which might be recovered pass through his hands so that he could collect a fee or commission on it. No other plausible motive appears. He argues that additional state and federal taxes might be demanded. In the light of the record this appears to be an excuse, rather than a reason, for subjecting this property to the hazards of expensive and long-drawn-out litigation. The result of such lawsuits could only be, when all is said and done and the last mile of legal road traveled, to turn over to appellant the property he now has less what will have been eroded in transit.

And the will contest affords appellee no ground upon which to stand, because, if the contest should succeed, he will be without authority, and, so far as the record discloses, without any interest in this estate. The claim that the executor is proceeding to protect himself against contingent tax claims will not bear examination. In the first place, all claims of that kind, both state and federal, have been paid, and there have been no demands made for more. On the contrary, the executor was told by some internal revenue officer that he could settle the estate without reference to the federal tax claim.

The State of Iowa has withdrawn from this litigation, its claim satisfied; the executor has been tendered security with any amount of collateral which to the court might seem necessary to protect appellee Thatcher; there is **enough real** estate to guarantee the payment of the tax; the executor still has on hand enough personal property to pay the remaining part of his fees, the only matter left open in the estate; and lastly, he has no fear of personal liability, considering the very large amount of property owned by appellant. Under

such a record, should the order which is now assailed have been granted? Our answer is in the negative.

██ Counsel for appellee, with much learning and diligence, have called to our attention a host of cases assumed to bear more or less directly on the question before us, but we have deemed it unnecessary to go beyond our own decisions. The statutory citations found in appellee's brief have to do with the commonplaces of probate law and practice so far as they relate to estate and inheritance taxes. He calls attention to only one of our opinions. This lends support to his contention, and it is Coon v. Luce (Iowa), 205 N. W. 647, which does not appear in our official reports. However, the expression found therein which would seem to authorize bringing of actions by an administrator or executor, under circumstances like those before us, runs counter to all of our decisions, early and late, and so far as it is contrary to the doctrine herein announced is overruled. This, from the early case of Douglas v. Albrecht, 130 Iowa 132, 135, 106 N. W. 354, 356, expresses views which we have consistently announced from that decision to our latest expression (except, or course, Coon v. Luce, supra):

"It may be conceded that the court is not without authority to appoint an administrator even if there be no creditors of the estate; but, if, on being appointed and bringing action against the heirs to recover the property, it is shown that all the heirs have already united in making a settlement and distribution of the personal assets of the estate, that agreement will not be annulled or ignored by the court, and the court will not sacrifice substance to form by ordering the delivery of said assets to the administrator merely to be redistributed to the same parties and in the same proportions as before. Notwithstanding the random expressions which may be cited from various authorities, we think it is not true that the heir obtains no title or interest in the personal estate of his ancestor except through the medium of an administrator. That such is not the case we have directly held in [citing cases]."

To the same effect see Davenport v. Sandeman, 204 Iowa 927, 216 N. W. 55; Bosserman v. Watson, 230 Iowa 627, 298 N. W. 804; and Molendorp v. First Nat. Bk., 183 Iowa 174,

1056

176, 166 N. W. 733, 734, wherein Weaver, J., speaking for the court, said:

"The one chief purpose of administration upon an estate is to collect the assets, apply the same to the payment of all proper charges and expenses, and turn the remainder over to the heirs or legatees entitled thereto. For this purpose, it is true that the legal title to the assets is in the administator, and, in strict regularity, one who is indebted to the estate should make payment to him; but if, instead of so doing, the debtor, acting in good faith, should, by mistake of law or fact, make payment direct to the person who would be entitled to receive it through the administrator, and the money is not needed or required by the administrator for the payment of claims or expenses, the end of the law is accomplished, and it would be little less than ridiculous to hold the debtor liable to pay his debt over again."

See also Heinz v. Vawter, 221 Iowa 714, 266 N. W. 486, and Baurer v. Myers, 224 Iowa 854, 278 N. W. 302.

█ Appellee has filed a motion to dismiss on the ground that the order under examination is not an appealable one. The proper ruling on this is determined by the correct application of paragraph 4 of section 12823 of the 1939 Code, which reads as follows:

"4. An intermediate order involving the merits or materially affecting the final decision."

It would seem to require no argument to support the contention that the trial court's order did involve the merits and materially affects the final decree. In fact, it was a final decree in such sense that if no appeal was allowed two cases probably involving much time and expense might have been tried. It is to be kept in mind that this order was not made in the two cases begun under its authority; this is a direct attack against an ex parte order made after full hearing from which both parties might appeal. We have no difficulty in holding that appellee's motion to dismiss this appeal should be and it is overruled. None of these cases cited demands a different result:

Odell v. Coquolette, 103 Iowa 435, 72 N. W. 670; In re Receivership of Bank of Hamburg, 203 Iowa 1399, 214 N. W.

561; Barber v. Shattuck, 207 Iowa 842, 223 N. W. 864; Baker v. American R. Exp. Co., 207 Iowa 1350, 224 N. W. 513; Federal Sur. Co. v. Des Moines Morris Plan Co., 209 Iowa 339, 228 N. W. 293; Frazier v. Wood, 215 Iowa 1202, 247 N. W. 618; Grimm v. First Nat. Bk., 221 Iowa 667, 266 N. W. 517; Ontjes v. McNider, 224 Iowa 115, 275 N. W. 328; Hayes v. Selzer, 227 Iowa 693, 289 N. W. 25; McGrath v. Mott, 229 Iowa 790, 294 N. W. 891.

Prompted by the undoubted fairness and justice of the law as announced in these decisions, conducive as it is to the safeguarding of estates, we hold the trial court should have sustained appellant's motion to cancel the authority given the executor to sue and his application to direct the executor to dismiss the suits already commenced.

To the end that an order in conformity herewith may be issued, this cause is reversed and remanded.—Reversed and remanded.

BLISS, C. J., and MILLER, OLIVER, WENNERSTRUM, GARFIELD, and HALE, JJ., concur.

MITCHELL, J., takes no part.